No. 08-3374-cr
USA v. Kalish

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 24th day of November, two thousand ten.

PRESENT:   JON O. NEWMAN,
                RALPH K. WINTER,
                GERARD E. LYNCH,
                          *Circuit Judges.*

------------------------------------------------------------------

UNITED STATES OF AMERICA,
                        *Appellee,*

          v.                                    08-3374-cr (Lead)
                                                  09-4978-cr (Con)

LEONARD KALISH,
                        *Defendant-Appellant.*

------------------------------------------------------------------

FOR APPELLANT:   HERALD P. FAHRINGER (Erica T. Dubno, *on the brief*), Fahringer & Dubno, New York, New York.

FOR APPELLEE:   MICHAEL A. LEVY, Assistant United States Attorney, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York

(Robert P. Patterson, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Petitioner-appellant Leonard Kalish ("Kalish") appeals from a July 23, 2008 judgment of conviction on all three counts of a three-count indictment charging him with conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 371, wire fraud, in violation of 18 U.S.C. § 1343, and mail fraud, in violation of 18 U.S.C. § 1341. At trial, the Government established that Kalish, through his company, The Funding Solution ("TFS"), fraudulently induced hundreds of prospective borrowers into paying purportedly refundable advance fees in exchange for promises of assistance in securing loans. When neither the loans nor the promised assistance materialized, the advance fees were not returned. Undercover FBI agents gathered evidence supporting the wire and mail fraud counts by posing as restaurateurs seeking funding for a restaurant called "Quick Bites." Kalish refused to return their advance fee after failing to obtain a loan for their venture.

On appeal, Kalish principally argues that (1) the indictment was defective, (2) the evidence was insufficient to warrant a conviction, (3) the trial court erroneously admitted key evidence, (4) the trial court's interruptions during summation deprived him of effective representation, and (5) his sentence was unreasonable.[1] We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to

---

[1] In this order, we address Kalish's appeal only insofar as it challenges his conviction and sentence of imprisonment. In an accompanying opinion, we address Kalish's appeal from the district court's November 24, 2009 order of forfeiture as well as his claims regarding restitution.

2

explain our decision.

## DISCUSSION

### I. Kalish's Challenges to the Indictment

Kalish claims that the Government "constructively amended the indictment" by offering evidence at trial that went beyond the Quick Bites transaction referenced in the substantive wire and mail fraud counts. "Constructive amendment . . . occurs when the presentation of evidence . . . modif[ies] essential elements of the offense charged to the point that there is a substantial likelihood that the defendant [was] convicted of an offense other than the one charged by the grand jury." United States v. Clemente, 22 F.3d 477, 482 (2d Cir. 1994). Nothing of the sort happened here. Count one of the indictment charged Kalish with "a scheme to defraud *numerous* Prospective Borrowers" seeking loans for "*various* business projects" over the course of a six-year period. (emphasis added.) Because the indictment reached well beyond the Quick Bites scheme, the prosecution was free to offer evidence of Kalish's many other victims.

In some tension with his constructive amendment claim, Kalish next argues that the indictment charged "an overly broad conspiracy" and was insufficiently specific. This claim fails because "an indictment 'need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms.'" United States v. Frias, 521 F.3d 229, 235 (2d Cir. 2008), quoting United States v. Flaharty, 295 F.3d 182, 198 (2d Cir. 2002); see also United States v. Carr, 582 F.2d 242, 244 (2d Cir. 1978). Kalish's indictment did more than track the statutory text:

it provided details about the nature of the fraudulent scheme, the content of Kalish's allegedly fraudulent representations, and the specific dates of some of the overt acts taken in furtherance of the conspiracy. Therefore, it exceeded the minimal specificity required.[2]

Finally, Kalish claims that the indictment was "fatally flawed" because it "incorporated key conspiracy allegations from Count One into Counts Two and Three . . . ." This argument is wholly frivolous: the Federal Rules of Criminal Procedure expressly permit one count of an indictment to "incorporate by reference an allegation made in another count." Fed. R. Crim. P. 7(c)(1). To the extent Kalish challenges the indictment as duplicitous, his inability to show prejudice resulting from the alleged duplicity defeats the claim. United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981).

## II. Sufficiency of the Evidence

Kalish argues that the Government's evidence at trial failed to establish intent to defraud. Our review of the jury's verdict is highly deferential: we must affirm the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Aguilar, 585 F.3d 652, 656 (2d Cir. 2009) (internal quotation marks omitted); see also United States v. MacPherson, 424 F.3d 183, 187 (2d Cir.

---

[2] Kalish also complains of insufficient pre-trial notice of the Government's allegations against him. "[A] claim concerning information needed for trial preparation is more appropriately addressed to a bill of particulars." United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988) (internal quotation marks omitted). Here, Kalish requested additional specificity pre-trial and the Government provided more than adequate details regarding the victims of the fraud and the nature of the proof it intended to offer at trial. This satisfied the Government's obligation to inform Kalish of the charges against him. See United States v. Bagaric, 706 F.2d 42, 61-62 (2d Cir. 1983), abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994).

2005). In making that determination, we "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." United States v. Chavez, 549 F.3d 119, 124 (2d Cir. 2008).

Kalish insists that his actions were protected by his contractual arrangements with prospective borrowers. The Fee Agreements signed by borrowers technically permitted TFS to retain advance fees once it secured a loan proposal.[3] Kalish claims that he worked diligently on behalf of his clients and successfully obtained numerous loan proposals. According to Kalish, "where someone agrees, under a contract, to perform certain services with the intent to perform, then his failure to do so may give rise to civil liability, but it does not constitute a crime."

Kalish's argument fails to address the nature of the accusations against him. Kalish stands convicted of fraud in the *inducement* to contract, not of failing to live up to the promises contained in the Fee Agreements. The testimony of fraud victims and former TFS employees demonstrated that Kalish convinced prospective borrowers to pay advance fees by dramatically overstating TFS's efficacy and promising to refund advance fees if TFS failed to secure actual funding. That was more than sufficient evidence for the jury to conclude that Kalish had the requisite intent to defraud.

## III. The Trial Court's Evidentiary Rulings

We review evidentiary rulings for abuse of discretion and reverse only when the trial

---

[3] A "loan proposal" is an initial, non-binding letter of interest from a lender. It is distinct from a "loan commitment," which permits the borrower to bind the lender to the proposed terms of the loan.

5

court "acted arbitrarily or irrationally." United States v. Nektalov, 461 F.3d 309, 318 (2d Cir. 2006) (internal quotation marks omitted).

## A. The "Tombstones" Were Properly Admitted

Plaques – colloquially referred to as "tombstones" – purporting to depict successful loans and satisfied customers adorned TFS's walls. Many of these tombstones mischaracterized as "secured" loans TFS was merely pursuing; others actually represented wholly dissatisfied customers, some of whom testified against Kalish at trial. The Government offered fifty-nine such tombstones into evidence. Kalish claims that prejudice from this "cumulative proof . . . clearly outweighed any probative value that the tombstones may have had."[4]

Federal Rule of Evidence 403 permits the trial court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." Fed. R. Evid. 403. There was nothing "unfair," however, about drawing the jury's attention to the tombstones: "[e]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980). Here, the trial court admitted the tombstones into evidence because their misleading nature tended to show that Kalish intentionally overstated TFS's efficacy. This was highly probative of Kalish's intent to defraud. Kalish's assertion that the fifty-nine

---

[4] Kalish's claim that the tombstones constitute "blatant hearsay" is frivolous: the tombstones were not entered into evidence for their truth. See Fed. R. Evid. 801(c).

tombstones overstated the extent of his scheme is without merit because there was ample evidence from which the jury could have found that there were, in fact, hundreds of victims. Therefore, the tombstones were not unfairly prejudicial and were properly admitted.[5]

B.  The Admission of 404(b) Evidence Was Not Reversible Error

Prior to founding TFS, Kalish was a corporate officer of the Financial Corporation of America ("FCA").  In 1999, FCA was charged with mail fraud and Kalish, in his capacity as corporate officer, entered a guilty plea on its behalf.  During the Government's rebuttal case, the transcript of that plea allocution, the criminal information charging FCA with mail fraud, and the plea agreement Kalish signed on behalf of FCA were admitted into evidence. Kalish claims that this violated Federal Rule of Evidence 404(b).

Under Rule 404(b), other act evidence "is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of . . . intent . . . plan, knowledge, . . . or absence of mistake." Fed. R. Evid. 404(b).  "To determine whether a district court properly admitted other act evidence, [we consider] whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value . . . substantially outweighed . . . its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction . . . ." United States v. Guang, 511 F.3d 110, 121 (2d Cir. 2007), quoting United States v. LaFlam,

---

[5] Despite Kalish's claim that too many of the tombstones were offered into evidence, we find no reason to disturb the trial court's judgment that the tombstones – each depicting a different transaction – were not needlessly cumulative.

369 F.3d 153, 156 (2d Cir. 2004).

The broad discretion we afford trial judges on evidentiary rulings makes what was a relatively close call at trial an easy affirmance on appeal. First of all, this "Circuit takes an inclusionary approach to the admission of [404(b)] evidence under which such evidence is admissible for any purpose other than to show the defendant's criminal propensity." United States v. McCallum, 584 F.3d 471, 475 (2d Cir. 2009). The trial court found that the FCA evidence demonstrated Kalish's "knowledge that [he] had to be careful in making representations to borrowers [and] potential borrowers[] that would mislead them" and his "knowledge of the unlawful nature of conduct which would mislead or tend to mislead the borrowers." (Tr. 1284-85.) Demonstrating such knowledge is clearly a proper purpose. McCallum, 584 F.3d at 475. Second, the evidence was relevant to whether Kalish had the necessary intent to defraud. The jury could reasonably infer that Kalish's awareness of the illegality of conduct tending to mislead potential borrowers, combined with his clear willingness to dramatically overstate TFS's efficacy while masking the nature of the advance fees, demonstrated an intent to defraud.[6] Third, the fact that Kalish was not indicted based

_____

[6] Kalish asserts that his defense was "strictly limited to the Fee Agreement's unequivocal language," thereby "eliminat[ing] intent as an issue." As a legal matter, the Fee Agreement's language could not absolve Kalish of fraudulently inducing prospective borrowers to sign the Fee Agreement in the first place. See United States v. Wallach, 935 F.2d 445, 463 (1991) (concluding that "the withholding . . . of information that could impact on economic decisions can provide the basis for a mail fraud prosecution"). Kalish's defense amounted to a claim that he acted in good faith to fulfill the only promises he made to borrowers. That defense squarely placed his intent to defraud in issue.

on his involvement with FCA reduced any unfair prejudice resulting from the evidence's admission. Whatever prejudicial impact remained did not so outweigh the evidence's probative value so as to make its admission an abuse of discretion. That is particularly true because the FCA scheme "did not involve conduct any more sensational or disturbing than the crime with which [Kalish] was charged." United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990). Finally, the district court gave an emphatic limiting instruction immediately after admitting the evidence, and repeated the entirety of that instruction in its final charge to the jury. (Tr. 2476-78, 2694-96.) Therefore, we find no reversible error in the trial court's admission of this 404(b) evidence.

## IV. Interruptions During Summation

Kalish contends that Judge Patterson undermined his defense by interrupting defense counsel's summation eleven times in order to correct what Judge Patterson believed were misrepresentations of the record. Judge Patterson concluded each such "interruption" (some of which were simply rulings on prosecution objections) by instructing the jury that their recollection of the evidence – and not his – governed. Kalish argues that the judge's comments deprived him of effective assistance of counsel.

It is within the trial court's discretion to interrupt a summation when counsel misrepresents the factual record. See United States v. Mieles, 481 F.2d 960, 963 (2d Cir. 1973). Still, we must decide "whether the summation[] . . . w[as] so hindered by the trial court's interruptions as to have abridged [Kalish's] constitutional rights." United States v.

9

Busic, 592 F.2d 13, 36 (2d Cir. 1978). Even where "the trial judge's conduct left something to be desired," Untied States v. Amiel, 95 F.3d 135, 146 (2d Cir. 1996), we will reverse a conviction only if "the jurors have been so impressed by the judge's partiality that it affected their deliberations," United States v. Tocco, 135 F.3d 116, 129 (2d Cir. 1998); see also Busic, 592 F.2d at 37.

Busic provides a guidepost somewhere near the outer limits of acceptable behavior by a trial judge. There, we found no reversible error when the trial judge interrupted one defense summation eighteen times, and a second approximately forty times. Busic, 592 F.2d at 35-36. Insofar as Kalish's argument rests on the frequency of interruption, Judge Patterson's eleven interjections are well within the outer boundary set by Busic.

Nevertheless, the primary question is not the number of interruptions, but the nature of and justification for the trial judge's comments. While most of the comments here were insignificant and/or appropriate, a careful review of the record reveals two instances where the trial court interrupted defense counsel's summation even though no misrepresentations had occurred. In Busic, we excused the trial court's inappropriate interventions because defense counsel "was usually able to quickly reformulate his statement and proceed with his argument" and because "the judge specifically instructed the jury on at least two occasions that certain of his interruptions were unjustified and that counsel had been correct in his assertions." Id. at 36 n.6. Here, defense counsel quickly moved on with his summation after nearly every interruption. Furthermore, Judge Patterson made clear, both at the end of each

10

interjection and in his final charge to the jury, that the jury's recollection of the evidence controlled. He also clearly instructed the jurors that they were the "exclusive judges" of the facts and that the Court had "[no] opinion as to the facts or what [their] verdict should be." (Tr. 2663.) As a result, "whatever negative impression might arguably have been conveyed to the jurors by the court's questions and comments during summation was certainly erased by the court's subsequent comments to the jury." Busic, 592 F.2d at 37; see also United States v. Mickens, 926 F.2d 1323, 1327-28 (2d Cir. 1991).

## V. Kalish's Sentence of Imprisonment

We review Kalish's sentence for reasonableness. Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); United States v. Williams, 475 F.3d 468, 474 (2d Cir. 2007). "Reasonableness review is akin to review for abuse of discretion, under which we consider whether the sentencing judge exceeded the bounds of allowable discretion, committed an error of law in the course of exercising discretion, or made an erroneous finding of fact." Williams, 475 F.3d at 474 (internal quotation marks omitted).

Kalish asserts that the district court committed Guidelines errors in (1) calculating the amount of loss and (2) applying a four-level role adjustment after concluding Kalish was "an organizer or leader of a criminal activity that involved five or more participants . . . ." U.S.S.G. § 3B1.1(a). We review the district court's factual findings relevant to the Guidelines for clear error. United States v. Awan, 607 F.3d 306, 312 (2d Cir. 2010).

We find no reason to disturb the district court's conclusion regarding the applicable

11

loss amount, which need only be supported by a preponderance of the evidence. See United States v. Ruggiero, 100 F.3d 284, 290-291 (2d Cir. 1996). Here, the district court based its calculations on trial testimony and supporting affidavits that it meticulously reviewed and accepted only after a two-day sentencing hearing. Kalish's argument to the contrary merely rehashes his insufficiency claims, which we have already rejected.

Similarly, we find no reason to disturb the district court's conclusion that five or more individuals participated in the scheme. In addition to Joel Pondelik, Kalish's former employee who testified as part of a cooperation agreement, the district court found that TFS employees Corey Burns, Mickey Cox, Tor Newcomer, Osborne Williams, and Easton Bell assisted Kalish by making false representations to prospective borrowers. Kalish provides no reason to doubt this finding, and our independent review of the record has uncovered no error in the district court's determination.

As for substantive unreasonableness, we are unpersuaded by Kalish's conclusory assertion that his sentence to the bottom of the applicable Guidelines range "is far greater than necessary." There is no evidence that this case falls outside of "the overwhelming majority of cases" where "a Guidelines sentence [is] comfortably within the broad range of sentences that would be reasonable in the particular circumstances." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006). Therefore, we refuse to disturb the considered judgment of the trial court. See United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (noting "institutional advantages of district courts" in meting out appropriate sentences).

12

**CONCLUSION**

We have considered all of Kalish's additional arguments and find them to be without merit. For the foregoing reasons, the judgment of conviction is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court