**UNITED STATES of America,
Appellee,**

v.

**Sung Soo PARK, Defendant–Appellant.**

**Docket No. 05–6158–cr.**

United States Court of Appeals,
Second Circuit.

Argued: June 13, 2006.

Decided: Aug. 25, 2006.

Lawrence F. Ruggiero, New York, NY, for Defendant–Appellant.

Katherine Polk Failla, Assistant United States Attorney (Michael J. Garcia, United States Attorney, and Samidh Guha, Assistant United States Attorney, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

Before CABRANES, STRAUB, and HALL, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

We consider here whether the imposition of a sentence in conformity with the applicable United States Sentencing Guidelines (the "Guidelines") range for an offense involving cocaine base ("crack") is unreasonable because the Guidelines punish crack-related offenses equivalently to offenses involving 100–times greater quantities of powder cocaine. Defendant Sung Soo Park appeals from an order of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) declining to resentence him on a remand pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). Park contends that his sentence principally of 151 months of imprisonment, which was at the bottom of the applicable Guidelines range, was unreasonable because of the relative severity of Guidelines punishments for offenses involving crack and because the type and amount of narcotics involved

in the deals for which Park was prosecuted were determined not by Park, but instead by a confidential informant ("CI") working with the government. We conclude that in the circumstances presented the sentence imposed was reasonable, and we therefore affirm the order of the District Court declining to resentence Park.

### BACKGROUND

The facts below are taken from the evidence adduced at trial and are undisputed on appeal.

Defendant Sung Soo Park conspired with a co-defendant, Tyrone Sherrod, to sell crack on two occasions to a CI working with the Federal Bureau of Investigation. In October 2000, the CI requested Park's help in fulfilling a recurring order for $1,000 worth of crack. Park initially declined to "get involved," but later promised to call a man he referred to as the "black guy," who turned out to be Park's co-defendant Sherrod. Park contacted the CI and told him, during a recorded phone conversation on October 25, 2000, that the deal had been "worked out." Park inquired as to when the CI needed the narcotics delivered, and Park agreed to find out the price from his supplier. In another recorded telephone conversation later that same day, Park assured the CI that he would receive the "best stuff" and that the supplier was trustworthy. In addition, Park cautioned the CI that it would be safest to "buy[ ] a little at a time," and told him that he would find out the price "tonight or tomorrow." The next evening, Park and the CI had another recorded telephone conversation in which Park reported back that the price was $30 per gram or $840 per ounce and questioned the CI about when he wanted to complete the deal. The CI expressed his intention to perform the transaction the following Wednesday. Park and the CI spoke again on a recorded line that evening, when Park told the CI that the price had increased to

$1,000 (presumably per ounce). Upon the CI's inquiry, Park clarified that the price was for crack and that powder cocaine would cost more. The CI accepted the price and urged that the two "continue making deals like this from now on." Park answered, "[L]et's."

The transaction was subsequently rescheduled for November 7, 2000. The CI, who was wearing a recording device, called Park, who directed that the CI drive to 125th Street and Amsterdam Avenue in Manhattan and call Park again when he arrived. Park confirmed yet again that Sherrod, the source of the narcotics, was someone that the CI would be able to "trust for sure" because he had been a friend of Park's "since a long time ago" when Park "did heroin." The CI asked if Sherrod could supply heroin as well, and Park replied "Now I . . . I don't do that."

The CI drove to 125th Street and Amsterdam Avenue and called Park to announce his arrival. Sherrod then pulled up in a vehicle and instructed the CI to follow Sherrod in his own vehicle, which the CI did. They drove for a few minutes and then Sherrod parked and got into the CI's car. Sherrod requested the $1,000 before he produced the narcotics. The CI resisted, and the CI and Sherrod then called Park, who reassured the CI that he could trust Sherrod. The CI gave Sherrod the cash, and Sherrod provided approximately twenty-six grams of crack to the CI. Following the transaction, Sherrod instructed the CI to call Park when he wanted to proceed with the next transaction.

On December 4, 2000, the CI called Park to arrange another crack transaction. During the conversation, which was recorded, the CI requested an ounce of the same quality crack he had received previously. Park and the CI met on February 13, 2001, and the CI informed Park, during a recorded conversation, that he needed

two ounces of crack. On February 15, 2001, Sherrod and the CI met in the CI's car around 125th Street and Amsterdam Avenue. Sherrod called Park so that Park could explain to the CI—who spoke limited English—in Korean that they, Sherrod and the CI, would have to wait for twenty minutes until Sherrod's source arrived with the crack. Sherrod put the CI on the phone and Park explained the situation in Korean. Eventually Sherrod left the car and returned with 57 grams of crack, which he provided the CI in exchange for $2,000.

On March 16, 2001, Park broached the subject of a third possible crack deal with the CI, who did not accept the suggestion. Park was arrested on September 4, 2001, and, after having been read his *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he confessed to having been "responsible for setting up the two crack deals."

On December 15, 2001, Park was indicted on three counts: first, conspiracy to distribute and possess with intent to distribute 50 grams or more of mixtures and substances containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846; second, distributing five or more grams of mixtures and substances containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); third, distributing 50 or more grams of mixtures and substances containing a detectable amount of cocaine base, in violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(A).

Park was convicted by a jury on all three counts. He was thereafter sentenced principally to 151 months of imprisonment. Park appealed his conviction and sentence. This Court affirmed the conviction, held the mandate pending the resolution of *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),

and then remanded the cause so that the District Court could determine, in accordance with the procedure set forth in *Crosby,* whether to resentence Park. *See United States v. Sherrod,* 111 Fed.Appx. 72 (2d Cir.2004).

On remand, Park sought a non-Guidelines sentence on the basis of, *inter alia,* the disparity between the sentences imposed on defendants who have committed offenses involving crack and defendants who have committed offenses involving the same weight of powder cocaine. The government responded that the Guidelines reflect Congress's determination of the appropriate relative penalties for crack and cocaine offenses. On November 3, 2005, Judge Hellerstein held a hearing in which he acknowledged that "[t]he Guidelines are very stiff," but also mentioned "the elevated culpability of dealing with crack cocaine." Tr. of *Crosby* Hr'g, Nov. 3, 2005, at 6. Judge Hellerstein issued an order in which he declined to resentence Park, and that order is the subject of this appeal.

## DISCUSSION

Park contends that it was "plainly unreasonable" for the District Court to adhere to a sentence within the applicable Guidelines range because "the district court [did] not ... take into account the disparity in sentencing for crack cocaine cases and powder cocaine cases, particularly where the government chose crack cocaine as the object of the undercover operation." Def. Appellant's Br. at 16–17.

We have jurisdiction to review the District Court's sentence for reasonableness, notwithstanding that the sentence imposed was within the applicable Guidelines range. *See United States v. Fernandez,* 443 F.3d 19, 25–26 (2d Cir.2006); *see also* 18 U.S.C. § 3742(a)(1) (allowing for review of sentences "imposed in violation of law"). Although we do not entertain a

presumption that a sentence within the applicable Guidelines range is reasonable, we acknowledge "that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *Fernandez*, 443 F.3d at 27. Our review of a sentence "is akin to review for abuse of discretion," and thus we "consider whether the sentencing judge exceeded the bounds of allowable discretion[,] . . . committed an error of law in the course of exercising discretion, or made a clearly erroneous finding of fact." *Id.* (alteration in original) (internal quotation marks omitted).

Recently, in *United States v. Castillo*, 460 F.3d 337, 2006 WL 2374281 (2d Cir. Aug.16, 2006), we joined the Courts of Appeals for the First, Fourth and Eleventh Circuits in holding "that district courts do not have the authority to reject unilaterally the 100:1 ratio on policy grounds." [1] *Id.* at *1; *see also United States v. Williams*, 456 F.3d 1353, 2006 WL 2039993, at *9 (11th Cir. July 21, 2006) ("The 100–to–1 drug quantity ratio not only reflects Congress's policy decision that crack offenders should be punished more severely, but also reflects its choice as to how much more severe the punishment should be. Federal courts are not at liberty to supplant this policy decision."); *United States v. Eura*, 440 F.3d 625, 633 (4th Cir.2006) ("As much as one might sympathize with the district court's concern regarding the inequities of the 100:1 ratio as expressed by the Sentencing Commission in its reports, it simply would go against . . . explicit Congressional directives to allow sentencing courts to treat crack cocaine dealers on the same, or some different judicially-imposed, plane as powder cocaine dealers."); *United States v. Pho*, 433 F.3d 53, 62 (1st Cir.2006) (rejecting the application of a non-Guidelines sentence stemming from a district court's disagreement with the 100:1 ratio and explaining that "[m]atters of policy typically are for Congress" and that "in the absence of constitutional infirmity, federal courts are bound by Congress's policy judgments, including judgments concerning the appropriate penalties for federal crimes"). We determined that a non-Guidelines sentence imposed simply because a district court disagreed with the 100:1 ratio was unreasonable. *See Castillo*, 460 F.3d 337, 2006 WL 2374281, at *1. We are presented here with the related question of whether the imposition of a Guidelines sentence for a crack offense is *per se* unreasonable as a result of the 100:1 ratio.

■ As we explained in *Castillo*, the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), may have freed sentencing judges from mandatory compliance with the Guidelines but policy determinations concerning the relative severity of punishments for particular types of offenses continue to be left to Congress. *Castillo*, 460 F.3d 337, 2006 WL 2374281, at *16–17. "While Congress has delegated its authority to fix penalties to the Sentencing Commission (whose Guidelines can then be accepted, modified, or rejected by Congress), and while judges may not mandatorily apply the Guidelines, nothing in *Booker* empowers judges to define penalties for categories of crimes." *Id.* at *16; *see also Mistretta v. United States*, 488 U.S. 361, 412, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (holding that Congress did not violate the Constitution by effectuating its

---

1. The so-called 100:1 ratio refers to the disparity in penalties for crack offenses and cocaine offenses in the Guidelines. "[A] crime that involves a certain quantity of crack cocaine falls within the same sentencing range as a crime that involves 100 times that amount of powder cocaine." *Castillo*, 2006 WL 2374281, at *1.

sentencing policy through the Sentencing Commission and the Guidelines); *Booker*, 543 U.S. at 242, 125 S.Ct. 738 (commenting that *Booker* "does not call into question any aspect of our decision in *Mistretta*," which "was premised on an understanding that the Commission, rather than performing adjudicatory functions, instead makes political and substantive decisions"). The Guidelines provisions implicating the 100:1 ratio are no exception. Just as it would be error for a sentencing judge to impose a non-Guidelines sentence on the basis of a disagreement with Congress's policy judgment regarding the 100:1 ratio, *see Castillo*, 2006 WL 2374281, at *1, it is not *per se* error for a sentencing judge to adhere to that policy judgment by imposing the sentence recommended by the Guidelines. We therefore hold, for the reasons set forth in *Castillo, id.* at *5–13, that imposition of a Guidelines sentence in a case involving a crack offense does not yield a sentence that is unreasonable merely because the Guidelines adhere to the 100:1 ratio that Congress, in the proper exercise of its policy-making power, has seen fit to adopt. In reaching that conclusion, we join our sister circuits that have considered the issue. *See United States v. Cawthorn*, 429 F.3d 793, 802 (8th Cir.2005) (rejecting the argument that "it was error for the court *not* to sentence outside the

Guidelines range because it is always unreasonable to treat crack cocaine 100 times worse than powder cocaine"); *United States v. Gipson*, 425 F.3d 335, 337 (7th Cir.2005) (same); *see also United States v. Pope*, 2006 WL 2403505, at *5 (11th Cir. Aug.22, 2006) (affirming Guidelines crack sentence and rejecting defendant's argument that district court erred by failing to recognize that it "was free to disregard the 100:1 ratio in calculating his Guidelines range or as part of its 18 U.S.C. § 3553(a) analysis").

■ We also find unpersuasive Park's contention that the 151–month term of imprisonment imposed on him was unreasonable in light of the specific circumstances of his case. He played an active, albeit intermediary, role in two separate transactions involving a total quantity of approximately 73 grams of crack. In addition, he had previously been convicted of manslaughter in the second degree in state court. Furthermore, even though it was the CI, working with the government, who initiated the deals,[2] the record makes clear that Park was fully aware of what substance was being sold and how much of it was at issue. Upon consideration of these and all the other facts in the record, we conclude that the sentence imposed, which is at the bottom of the applicable Guidelines range, was reasonable.[3]

**2.** On his prior appeal, Park claimed that he had been entrapped and that the government engaged in sentencing manipulation. We rejected those arguments. *See United States v. Sherrod*, 111 Fed.Appx. 72 (2d Cir.2004).

**3.** Park also argues that "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), which a sentencing judge must consider among all the sentencing factors in § 3553(a), counsels against the reasonableness of a sentence that reflects the 100:1 ratio. That argument is foreclosed because "Congress has time and again clarified that in its view crack and powder cocaine offenses are

not 'similar conduct.'" *Castillo*, 2006 WL 2374281, at *17; *see also Fernandez*, 443 F.3d at 28 (noting that "disparity between *non-similarly situated* co-defendants is not a valid basis for a claim of error under 18 U.S.C. § 3553(a)(6)") (emphasis in original); *United States v. Moore*, 54 F.3d 92, 99 (2d Cir.1995) (explaining that the U.S. Sentencing Commission imposed the 100:1 ratio in the Guidelines pursuant to Congress's conclusion that "the burgeoning crack epidemic was a serious problem that had to be addressed quickly by harsh penalties").

In any event, even if § 3553(a)(6) were to have militated in favor of a non-Guidelines sentence here, the District Court was required

CONCLUSION

Because the sentence imposed on Park was reasonable, we AFFIRM the order of the District Court declining to resentence him.

to consider all "the individualized, case-specific factors in § 3553(a)," *Castillo,* 2006 WL 2374281, at *21 (internal quotation marks omitted); *cf. Fernandez,* 443 F.3d at 34–35 (holding that a "sentencing judge need not address on the record each of the ... § 3553(a) factors, nor each argument that a defendant makes with reference to those factors, in order to comply with her obligation to consider the factors" and that "in the absence of record evidence suggesting the contrary, we entertain a strong presumption that a sentencing judge has taken properly presented arguments into account and considered all the § 3553(a) factors in the course of imposing a sentence"), and the amount of weight that Judge Hellerstein accorded to § 3553(a)(6) or to any argument made pursuant to that factor is beyond our review because the sentence ultimately imposed is reasonable. *See Fernandez,* 443 F.3d at 32 ("The weight to be afforded any given argument made pursuant to one of the § 3553(a) factors is a matter firmly committed to the discretion of the sentencing judge and is beyond our review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented.").