07-3330-cr
USA v. Keller

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2007

(Submitted: June 23, 2008                                           Decided: August 14, 2008)

Docket No. 07-3330-cr

UNITED STATES OF AMERICA,

        *Appellee*,

        v.

ROBIN KELLER,

        *Defendant-Appellant.*

Before: MINER, CABRANES, *Circuit Judges*, and BERMAN, *District Judge.**

      In this appeal from a judgment of conviction in the United States District Court for the District of Vermont (William K. Sessions, *Chief Judge*), defendant challenges the sentence imposed and seeks a remand pursuant to *United States v. Regalado*, 518 F.3d 143 (2d Cir. 2008), on the basis that the District Court did not fully appreciate its discretion to consider the disparity between the Sentencing Guidelines' treatment of crack and powder cocaine offenses. We hold that, unless the record unambiguously demonstrates that a district court was aware of the full extent of its discretion and declined to exercise it, a remand is appropriate.

      Remanded for proceedings consistent with this opinion.

> Joseph R. Perella, Assistant United States Attorney (Thomas D. Anderson, United States Attorney, Gregory L. Waples, Assistant United States Attorney, *on the brief*), United States Attorney's Office for the District of Vermont Burlington, VT, *for Appellee*.
>
> E.M. Allen, Stetler, Allen & Kampmann, Burlington, VT, *for Defendant-Appellant*.

---

    * The Honorable Richard M. Berman, Judge of the United States District Court for the Southern District of New York, sitting by designation.

JOSÉ A. CABRANES, *Circuit Judge*:

We write briefly to clarify that (1) the record must unambiguously demonstrate that the District Court was aware of "its discretion to consider that [the disparity between cocaine base and cocaine powder offenses in the United States Sentencing Guidelines] might result in a sentence greater than necessary," in order to avoid a remand pursuant to *United States v. Regalado*, 518 F.3d 143, 147 (2d Cir. 2008); and (2) that a *Regalado* remand is appropriate notwithstanding a district court's decision to grant a two-level departure in anticipation of pending modifications to the "crack" guidelines. Because the record is unclear as to whether the District Court understood that it could impose a non-Guidelines sentence based on the cocaine base-cocaine powder disparity contained in the Guidelines, we remand the cause for the District Court to consider whether resentencing is appropriate.

## BACKGROUND

Defendant-appellant Robin Keller appeals from a judgment of conviction of the United States District Court for the District of Vermont (William K. Sessions, *Chief Judge*). She pleaded guilty to conspiracy to possess and distribute fifty grams or more of cocaine base, or "crack," in violation of 21 U.S.C. §§ 846 and 841(a), a charge which carried a ten-year mandatory minimum, *see* 21 U.S.C. 841(b)(1)(A).

Sentencing in the District Court

Defendant was sentenced on July 25, 2007. At sentencing, the District Court determined that the applicable Guidelines range was 360 months' to life imprisonment,[1] but the Court agreed to impose a non-Guidelines sentence, consistent with the recommendation contained in the plea agreement. After considering the testimony of various witnesses and the parties' arguments, the Court stated that it had "balance[d] all of those factors, to determine a sentence which is according to 18 U.S.C. § 3553(a)

---

[1] The District Court's findings were consistent with the recommendations contained in the Pre-Sentence Report ("PSR"), based on the following calculations. The defendant's base offense level was 38 as a result of the weight of crack involved in the offense. *See* U.S.S.G § 2D1.1(c)(1). The PSR added a four-level role enhancement pursuant to section 3B1.1(a) and deducted three levels for acceptance of responsibility, *see id.* § 3E1.1. Defendant's criminal history placed her in Category V.

2

. . . sufficiently long to satisfy the purposes of sentencing, but not overly long." It reviewed each of the factors in turn, along with the evidence it considered most relevant. The Court then announced that it would "depart to criminal history category five, offense level 31, [resulting in a sentencing range of] 168 to 210 months." This calculation was based, in part, on a two-level reduction to reflect the then-forthcoming changes in the Sentencing Guidelines for offenses associated with crack cocaine. The District Court explained the basis for the two-level reduction:

> [T]he reason I do that, quite frankly, is because if the Sentencing Commission were ever to determine that the crack adjustment of two levels was to be applied retroactively, then we would have to come back for a new sentencing, but, in this particular case, I am already taking that into consideration so there would be no need to apply a retroactive application of the adjustment in the guidelines because it basically is a factor.

The parties did not raise the specific issue of the Court's discretion to consider the crack-powder cocaine disparity under § 3553(a). The Court did not itself acknowledge its discretion to consider the crack-powder cocaine disparity as a basis for imposing a non-Guidelines sentence—even though it did recognize that forthcoming changes to the Guidelines somewhat mitigated that disparity—nor did it mention any pending cases in which such a theory was pressed, such as *Kimbrough v United States*, 552 U.S.—, 128 S. Ct. 558 (2007). The Court's only additional comments regarding the weight of crack and the seriousness of the offense were remarks that it was "the largest crack cocaine case . . . I think I have had in 12 years on the bench." The Court then sentenced defendant principally to a term of 168 months' incarceration, a term below the otherwise applicable Guidelines range but above the mandatory minimum.

Legal Background

At the time that the District Court sentenced defendant, the law of our Circuit did not acknowledge a district court's so-called "variance discretion" with respect to whether the quantity disparity between crack and powder cocaine set forth in the Guidelines—a 100-to-1 crack-powder

3

ratio—results in an unfair measure of the seriousness of the offense.[2] *See, e.g., United States v. Jones*, 531 F.3d 163, 181 (2d Cir. 2008) (describing our Court's approach to "variance discretion" prior to *Kimbrough*). Indeed, we held in *United States v. Castillo* that neither § 3553(a) nor the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), authorized a district court to "sentence defendants for offenses involving crack cocaine under a ratio different from that provided in the Sentencing Guidelines." 460 F.3d 337, 361 (2d Cir. 2006); *see also United States v. Park*, 461 F.3d 245, 250 (2d Cir. 2006) (same). This view was subsequently rejected by the Supreme Court in *Kimbrough*, 128 S. Ct. at 574, *abrogating Castillo*, 460 F.3d at 337 (holding that district courts should not treat the Guidelines crack-powder ratio as mandatory); *see also Gall v. United States*, 552 U.S.— , 128 S. Ct. 586, 597 (2007) (holding that a district court must make an individualized assessment of sentencing decisions). Certiorari was granted in *Kimbrough* in June 2007, *see* 127 S. Ct. 2933 (June 11, 2007) (No. 06-6330); the Court issued its decision on December 10, 2007.

Following *Kimbrough*, our Court set forth principles for addressing appeals, such as this one, that were pending at the time *Kimbrough* was decided. *See Regalado*, 518 F.3d at 150-51. Where a defendant had not raised the issue of variance discretion before the sentencing court or otherwise challenged the 100-to-1 ratio, we could not "know whether the district court would have imposed a non-Guidelines sentence had it been aware (or fully aware) of its discretion to deviate from the crack cocaine ranges in light of the objectives of sentencing." *Id.* at 150. For that reason, we determined that the best course was to remand the cause so that the District Court could determine whether it would have imposed a different sentence in light of the recognition of its discretion to impose a non-Guidelines sentence in light of the 100-to-1 ratio. *Id.* at 151.

---

[2] While the terms "departure" and "variance" are often used interchangeably to describe deviations from the recommended Guideline range, *see, e.g., Gall v. United States*, 552 U.S. —, —, 128 S. Ct. 586, 597 (2007), as used in this opinion, a "departure" refers to a decision by the District Court to impose a sentence outside the otherwise applicable Sentencing Guidelines range pursuant to a provision of the Guidelines. *See, e.g.,* U.S.S.G. § 4A1.3 (departure based on inadequacy of criminal history category); *id.* § 5K1.1 (departure based on substantial assistance to authorities); *cf. Irizarry v. United States*, 128 S. Ct. 2198, 2202 (2008) (concluding that as the term was used in the Federal Rules of Criminal Procedure, "[d]eparture' is a term of art under the Guidelines" which refers to an adjustment under the Guidelines framework to the recommended range ). A "variance," on the other hand, describes the District Court's power pursuant to 18 U.S.C. § 3553(a) to impose a sentence outside of the otherwise applicable Guidelines range, which we call a "non-Guidelines sentence." *See, e.g., id.* at 2200.

4

On appeal, defendant argues that (1) the District Court erred by sentencing her "under the guidelines with a downward departure after determining that a non-guidelines sentence was appropriate"; and (2) we should remand the cause for resentencing pursuant to our decision in *Regalado*, 518 F.3d at 143.

## DISCUSSION

We review a district court's imposition of a particular sentence for procedural and substantive reasonableness, which is akin to review under an abuse-of-discretion standard. *See Gall*, 128 S. Ct. at 597; *Regalado*, 518 F.3d at 147. Where a defendant did not raise a claim before the District Court, we review the claim for plain error. *Regalado*, 518 F.3d at 147. "To demonstrate plain error, a defendant must show (1) error, (2) that is plain at the time of appellate review, and (3) that affects substantial rights. Where these conditions are met, we have the discretion to notice a forfeited error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Quinones*, 511 F.3d 289, 316 (2d Cir. 2007).

As an initial matter, we reject defendant's contention that the District Court erred by agreeing to impose a non-Guidelines sentence and then imposing a sentence that "is really just an eight level departure within the guidelines sentencing scheme." Appellant's Br. at 6. In essence, she contends that the District Court stated that it would grant a variance from the Guidelines regime but then merely granted her a downward departure instead. While the record shows that the District Court used both "departure" and "non-[G]uideline[s] sentence" to describe the sentence it imposed, it is also clear from the record that the District Court relied on its power under §3553(a)—and not on any Guidelines provision—as a basis for the seven-level "departure." We see no error whatsoever in the District Court's use of the framework and terminology of the Guidelines in the course of exercising its variance discretion. To the contrary, we have said that in order to comply with *Booker*, 543 U.S. at 220, a district court must first consider the applicable guidelines range before imposing a sentence. *See United States v.*

5

*Crosby*, 397 F.3d 103, 115 (2d Cir. 2005) ("[A] sentencing judge would commit a statutory error in violation of section 3553(a) if the judge failed to 'consider' the applicable Guidelines range (or arguably applicable ranges) as well as the other factors listed in section 3553(a), and instead simply selected what the judge deemed an appropriate sentence without such required consideration."). If a district court then chooses to express its decision to impose a non-Guidelines sentence in the terminology of the Guidelines, that decision is well within the discretion of the district court. Accordingly, we conclude that the sentence imposed was both procedurally and substantively reasonable in this respect.

Defendant's second argument—that a remand pursuant to *Regalado* is required—raises the recurring issue of how we will determine whether a district court understood its variance discretion, which was recognized by the Supreme Court in *Kimbrough*, 128 S. Ct. at 574. As noted above, at the time of sentencing in this case, our own case law prohibited a district court from imposing a non-Guidelines sentence solely on the basis of that court's disagreement with the 100-to-1 ratio provided by statute. *See Park*, 461 F.3d at 250. Nevertheless, the Government insists that "even before [the Supreme Court issued its decision in] *Kimbrough*, Judge Sessions was aware of his authority to depart [from the guidelines] based upon the crack/powder cocaine disparity." Appellee's Supplemental Br. of 7/8/08 at 2.

The Government points to various indications in the record and outside the record of Chief Judge Sessions's awareness of his "variance discretion," but these fall short of an explicit statement by the sentencing court that it was aware of its discretion to impose a lighter sentence but declined to do so. Accordingly, the Government suggests that remanding the case to the District Court pursuant to *Regalado* under these circumstances would be tantamount to imposing a requirement that a district court must explicitly state that it was aware of its variance discretion. The Government instead presses the view that we should not regard a district court's silence on the issue of the crack-powder disparity as indicating that the court "was unaware of [its] *potential* authority to depart from the advisory Guidelines

6

range based on that disparity" (emphasis added). Appellee's Supplemental Br. of 7/8/08 at 4. We have disavowed formulaic requirements, *see Crosby*, 397 F.3d at 113, and "robotic incantations," *see United States v. Brown*, 98 F.3d 690, 694 (2d Cir. 1996), for discharging a court's duties during sentencing, and we again decline to impose any such requirement.[3]

We cannot, however, adopt the Government's theory that where a record is silent on the district court's understanding of its variance discretion, we can nevertheless assume that the court understood its various sentencing options. *See Regalado*, 518 F.3d at 148 ("The unusual circumstances surrounding application of the crack Guidelines in the Circuit after *Booker* and before *Castillo* justify a narrow and limited exception to our general rule that sentencing courts are presumed to know and follow the applicable sentencing law."). While we do not impose an explicit statement requirement, we reiterate that, where there are any ambiguities in the record on this point, a remand for clarification is appropriate. *Cf. United States v. Ekhator*, 17 F.3d 53, 55 (2d Cir. 1994) ("[I]f we are unable to discern whether the district court's refusal to depart [downward] resulted from the exercise of its discretion or instead from a perceived, but mistaken, lack of authority, we remand to the district court for resentencing." (citations omitted)); *United States v. Ogbondah*, 16 F.3d 498, 501 (2d Cir. 1994) ("If the record is ambiguous [as to whether the district court understood its authority to depart downward on a particular ground], as it is here, we must remand to the district court to determine whether it understood the full scope of its authority." (citation omitted)).

---

[3] A passing mention in a footnote in *United States v. Regalado* may appear to leave open the possibility that such an explicit statement is required. *See* 518 F.3d 143, 150 n.4 (2d Cir. 2008). There, we observed that the unusual procedural posture of that case made it difficult to determine whether the district court was aware of its discretion to consider the impact of the 100-to-1 ratio:

> This appeal presents an additional wrinkle because on a *Crosby* remand—where the issue is whether the sentencing judge would have imposed a non-trivially different sentence had it anticipated *Booker*—there would have been no occasion for the Court to consider the harshness of the 100-to-1 ratio. *Even if the court did consider this issue, it would not have had to say so explicitly.*

*Id.* (emphasis added). While this statement could be read to imply that after *Kimbrough* an explicit statement was required, it is merely an explanation for why remand was appropriate in that case although the district court could have considered the ratio on the *Crosby* remand. *Regalado* did not impose an explicit statement requirement.

In evaluating whether a *Regalado* remand is appropriate, we consider the evidence in the record, such as the sentencing transcript and the parties' submissions.  The strongest evidence of this kind presented by the Government is the fact that the District Court explicitly accounted for the then-pending changes to the crack Guidelines in the course of imposing a non-Guidelines sentence.  While this may suggest that the Court was aware of (1) its discretion generally to depart from the Guidelines and (2) the pending changes to the Guidelines' treatment of crack cocaine, the record does not establish that the Court was aware of its authority to impose a non-Guidelines sentence because of a disagreement with the policy underlying the crack-powder disparity in the Guidelines.  Indeed, these possible indications of the District Court's understanding cannot surmount the fact that, as of the date defendant was sentenced, the District Court was bound by our holding in *Castillo* that it did not have this discretion.  *See Regalado*, 460 F.3d at 361.  We decline to consider the non-record evidence submitted by the Government for this purpose, and such evidence does not appear to be probative of the District Court's awareness of its variance discretion in any event.[4]  In light of the ambiguity of the record on this point, we cannot be confident that the District Court understood its variance discretion, and therefore we must remand the case for further consideration by the District Court.

## CONCLUSION

For the reasons stated above, the judgment is AFFIRMED and the cause REMANDED for consideration of whether resentencing is appropriate pursuant to *Regalado,* 518 F.3d at 143.

---

[4] Chief Judge Sessions's statements at a sentencing hearing for defendants in a different case several months after he sentenced Keller cannot demonstrate his awareness of his discretion at the time Keller was sentenced.  Similarly, we cannot place any weight on Chief Judge Sessions's likely personal knowledge of sentencing issues, because of his service as Vice Chair of the United States Sentencing Commission, as a basis for concluding that he was aware of his discretion to depart in order to account for the crack-powder disparity.  An inference on this basis would be speculative at best.

8