26 F.3d 297
 UNITED STATES of America, Appellant,
v.
Jack J. MINICONE, Jr., also known as Jake, Defendant-Appellee,
Jack Zogby, also known as Turk; Anthony J. Inserra;
Benedetto Carcone, also known as Benny; Russell
E. Carcone, Defendants.
 No. 1049, Docket 93-1594.
 United States Court of Appeals,
Second Circuit.
 Argued March 10, 1994.
Decided June 7, 1994.
 
 Deborah Watson, U.S. Dept. of Justice, Washington, DC (Gary L. Sharpe, U.S. Atty. N.D.N.Y., Kevin E. McCormack, Asst. U.S. Atty., Syracuse, NY, of counsel), for appellant.
 John A. Cirando, Syracuse, NY (Emil M. Rossi, Patrick J. Haber, Ivette Iza Zenner, Syracuse, NY, of counsel), for defendant-appellee.
 Before: LUMBARD, FEINBERG and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 The Government appeals from a judgment entered on July 23, 1993 in the United States District Court for the Northern District of New York (Munson, J.), after a second remand, sentencing defendant-appellee Jack Minicone to a 379-month term of imprisonment on his January 1991 conviction for conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Sec. 1962(c), and conspiring to conduct and participate in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Sec. 1962(d). The relevant conduct bearing on the sentence included the 1976 murder of one Al Marrone. According to the sentencing guidelines, Minicone should have been sentenced to a 480-month term of imprisonment. The district court's downward departure was based on a combination of Minicone's minor role in the Marrone murder and the misconduct of the murder victim.
 
 
 2
 For the reasons that follow, we vacate the sentence imposed by the district court and remand the case with instructions that the district court impose the statutory maximum prison term of 480 months.
 
 BACKGROUND
 
 3
 This appeal provides us with the opportunity to write the third and final chapter in what has become the four-year sentencing saga of Jack Minicone. Because the extensive factual background of this case is set forth in our two previous opinions, United States v. Minicone, 960 F.2d 1099 (2d Cir.) ("Minicone I "), cert. denied, --- U.S. ----, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992) and United States v. Minicone, 994 F.2d 86 (2d Cir.1993) ("Minicone II "), familiarity with which is presumed, we recite only those facts relevant to the disposition of this appeal.
 
 
 4
 Following a jury trial in the United States District Court for the Northern District of New York, Minicone was convicted in January of 1991 of conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Sec. 1962(c) (Count One), and of conspiring to conduct and participate in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Sec. 1962(d) (Count Two). These convictions were based on evidence at trial that Minicone and co-defendants Jack Zogby, Anthony Inserra, Benedetto Carcone, and Russell Carcone were involved in a wide-spread criminal enterprise, centered in Utica, NY, that spanned the period between the years 1973 and 1989 and included extortion, loansharking, illegal gambling, trafficking in stolen property and murder.
 
 
 5
 Among the activities in which Minicone was implicated was the 1976 murder of Al Marrone. Minicone, Zogby, and Inserra planned to kill Marrone shortly after his release from prison because he had threatened to kill them and their co-conspirator, Anthony Falange, and also because they feared that Marrone planned to take over their territory. The three began plotting the murder six months in advance. They interviewed several hitmen and ultimately hired Edward Noel to assist in the murder. Minicone, Zogby, Inserra and co-conspirator Dennis Pritchard met with Noel early in the fall of 1976 to plan the murder. On the night of October 2, 1976, while Minicone and Inserra kept their distance and monitored a police scanner, Noel, Zogby and another man shot and killed Marrone on the sidewalk in front of his girlfriend's home.
 
 
 6
 Minicone also was involved in the attempted murder in 1983 of Thomas Bretti. Minicone had been assigned to kill Bretti and attempted to do so by planting a bomb on the front steps of Bretti's home. Bretti was seriously and permanently injured when the bomb exploded. Minicone also participated actively in other aspects of the illegal enterprise: he ordered Pritchard to steal money from two local bookmakers in 1973; regularly engaged in the extortion of local bookmakers; received bets and collected money on behalf of a bookmaking operation; actively engaged in loansharking; and conspired with others to kill Pritchard after Pritchard was suspected of being an informant. Although he started out as a low-level figure in the enterprise in the early 1970s, Minicone gained prominence and was working directly for the "boss," Anthony Falange, by the late 1980s.
 
 
 7
 In the Pre-sentence Report, the Probation Department calculated Minicone's offense level to be 43 and his Criminal History Category ("CHC") to be II, resulting in a sentence of life imprisonment. However, the statutory maximum that Minicone could receive for the offenses of conviction was a 480-month term of imprisonment. See 18 U.S.C. Sec. 1963(a). Accordingly, the appropriate sentence was 480 months. In his sentencing memorandum to the district court, Minicone requested a downward adjustment pursuant to U.S.S.G. Sec. 3B1.2 based on his minor or minimal role in the Marrone murder. He also requested a downward departure pursuant to section 5K2.10 on the ground that Marrone's wrongful conduct, i.e., his threats to murder Minicone and other members of the conspiracy, contributed significantly to provoking the murder.
 
 
 8
 At the original sentencing proceedings in December of 1990 and January of 1991, the district court denied Minicone's requests for an adjustment pursuant to section 3B1.2 and for a downward departure pursuant to section 5K2.10. The district court found that Minicone's offense level of 43 and his CHC of II were calculated properly. The district court nevertheless departed from the Guidelines in order to achieve sentencing parity with Minicone's co-defendants, who had been sentenced to terms of imprisonment of between 18 months and 240 months. The district court sentenced Minicone to consecutive terms of imprisonment of 151 months on Count One and 240 months on Count Two, for a total of 391 months.
 
 
 9
 Minicone and his co-defendants appealed their convictions and sentences to this Court and the Government cross-appealed on the issue of Minicone's sentence. We affirmed the convictions, vacated Minicone's sentence and remanded to the district court "for the limited purpose of resentencing him in accordance with the Sentencing Guidelines." Minicone I, 960 F.2d at 1105. On the appeal, Minicone had identified as error, among other things, the district court's failure to reduce his offense level pursuant to section 3B1.2 for being a minor or minimal participant in the Marrone murder and its failure to depart downward pursuant to section 5K2.10 for Marrone's wrongful conduct. Addressing these contentions, we stated: "We hold that Minicone's claims, including, among others, that he was a minor or minimal participant in the crimes charged, are without merit." Id. at 1110. Addressing the Government's cross-appeal, we held that the district court had abused its discretion in departing downward because disparity in sentence between co-defendants is not a proper basis for such a departure. Id. at 1111-12.
 
 
 10
 On remand, Minicone did not present any new evidence. Nevertheless, the district court reconsidered Minicone's original requests for a section 3B1.2 adjustment and a section 5K2.10 departure. The court denied the section 5K2.10 departure, but after reviewing the case, found that a two-level reduction in Minicone's offense level was warranted pursuant to section 3B1.2(b) for his minor role in the Marrone murder. The court calculated Minicone's adjusted offense level to be 42 which, combined with a CHC of II, resulted in a Guidelines range of 360 months to life. The court sentenced Minicone to 379 months, one year less than his original sentence. The Government appealed again.
 
 
 11
 On the second appeal, we concluded that the district court had violated the law of the case rule by reconsidering Minicone's role in the Marrone murder after the argument had been rejected on appeal. Minicone II, 994 F.2d at 88-89. We found no support for Minicone's contention that, in disposing of the first appeal, we had not determined the extent of his participation in the murder of Marrone. Moreover, we found no change in the law or facts that would justify reconsideration of our earlier ruling in Minicone I. We remanded "for resentencing in a manner consistent with this opinion and our opinion in Minicone I." Id. at 89.
 
 
 12
 At the second re-sentencing proceeding conducted on July 21, 1993, Minicone again urged a downward departure pursuant to section 5K2.10 for Marrone's alleged misconduct. Over the Government's objection, the district court once again departed downward from the Guidelines range and sentenced Minicone to consecutive terms of imprisonment of 139 months on Count One and 240 months on Count Two, resulting in a total sentence of 379 months. The district court found that Marrone's wrongful conduct was "insufficient to warrant departure by itself" and recognized that "the [District] Court and the Circuit Court has [sic] already ruled or affirmed that there is no one factor which might be considered alone to justify a departure." Nevertheless, the district court found that a "combination of factors" justified a departure. The district court opined as follows:
 
 
 13
 [T]he Court believes [Minicone's] role in the murder of Marrone, while it may not be distinguishable enough from the roles of the other defendants in this case to warrant a mitigating role adjustment ..., in the Court's view it is different enough from the roles of the others to be taken into consideration as a grounds for departure. At the time of the Marrone Murder, [Minicone] was 28 years old and clearly only a minion and perhaps an upstart in this criminal organization.... While he participated in the planning of the murder, unlike other defendants in this case, he did not supply the murder weapon, provide a safe house or rendezvous for after the murder and was not at the scene of the murder. Further, the trial testimony clearly established the victim in this case was a violent criminal who repeatedly threatened to kill [Minicone] and others. And while [Minicone's] participation in the murder of Marrone was illegal and cannot be justified, and will be punished, it appears his actions were in part influenced by the conduct of the victim. The Court, again, does not believe this factor by itself would warrant a departure ... but considers it part of a combination of factors.
 
 
 14
 The district court concluded that its departure was structured to effect a one-level reduction in Minicone's offense level, which it noted was equivalent to a five-percent decrease. The court, "guided" by the fact that "the predicate act controlling the guideline computation is the murder of Marrone," made the following statement: "[T]he sentence I just imposed is within the range of sentences for murder in the second degree available under New York State Penal Law at the time the murder was committed, that is, 15 or 25 years to life." The Government appeals from the sentence.
 
 DISCUSSION
 
 15
 The "law of the case" rule bars the district court from " 'reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals.' " Minicone II, 994 F.2d at 89 (quoting United States v. Uccio, 940 F.2d 753, 757 (2d Cir.1991)). However, if an issue was not part of an appellate decision, the district court may review the matter. Id. Moreover, the doctrine does not bar an appeals court from reconsidering its prior rulings if, for example, "there has been an intervening change of controlling law, new evidence has become available, or there is a need to correct a clear error or prevent manifest injustice." Id. No events have occurred since our decision in Minicone II to cause our reconsideration of that decision. Indeed, the district court noted correctly that it was barred by the law of the case from basing any reduction in Minicone's sentence on his "minor role" in the offense, pursuant to section 3B1.2, because that argument was rejected in Minicone I and II. The district court also noted correctly that it was similarly barred from considering the victim's characteristics as a basis for a downward departure, pursuant to 5K2.10, because that contention was rejected in Minicone I.
 
 
 16
 The district court's attempt to "combine" the two factors as a single ground for departure was improper. A district court may depart from the applicable Guidelines range when it finds an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. Sec. 3553(b); see also U.S.S.G. Sec. 5K2.0 (Sentencing Commission's policy statement regarding departures, quoting Sec. 3553(b)). As the Sentencing Commission explains, it
 
 
 17
 intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.
 
 
 18
 U.S.S.G. Ch. 1 pt. A, 4(b). "[S]uch cases, [however], will be highly infrequent." Id. Here, the district court does not suggest that either of the factors it considered--Minicone's role in the offense and Marrone's misconduct--were not adequately considered by the Sentencing Commission, only that the combination of these factors justified departure. Indeed, it bears repeating that we have twice considered whether Minicone's conduct was deserving of a downward departure under the applicable Guidelines provisions and in both instances we concluded that it was not. See Minicone II, 994 F.2d at 89; Minicone I, 960 F.2d at 1110.
 
 
 19
 While this Court has not explicitly so stated, many courts have concluded that a combination of factors, all of which are adequately considered by the Guidelines, cannot justify a downward departure if they would not constitute grounds for an adjustment or departure when considered independently. See United States v. Goff, 907 F.2d 1441, 1447 (4th Cir.1990) (holding that combination of drug addiction, family responsibility, compensation of defendant with drugs instead of money and disparity between sentences of defendant and co-defendant did not justify downward departure because "viewing the factors cumulatively add[ed] nothing significant to the calculus"); United States v. Pozzy, 902 F.2d 133, 138 (1st Cir.) (district court's "totality of the circumstances" approach, which included consideration of pregnancy, marital relationship, effect of husband's punishment and lack of availability of halfway house, rejected as basis for downward departure because it would allow judge "to nullify the guidelines approach to sentencing"), cert. denied, 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990); United States v. Rosen, 896 F.2d 789, 791-92 (3d Cir.1990) (combination of absence of violence and defendant's mental condition, both of which were considered by the Guidelines, did not provide basis for downward departure); cf. United States v. Schular, 907 F.2d 294, 298 (2d Cir.1990) (number of weapons involved in offense and presence of semiautomatic weapons, two factors already considered by Guidelines, could not form basis for upward departure); United States v. Lara, 905 F.2d 599, 603 (2d Cir.1990) (affirming downward departure based upon several factors not considered by the guidelines).
 
 
 20
 As the Third Circuit has noted, "a combination of typical factors does not present an unusual case [warranting departure].... [T]o justify departure anytime a conjunction of considered factors was involved would make every case different and undermine the uniformity in sentencing sought by the guidelines." Rosen, 896 F.2d at 792. Although Minicone refers us to two Ninth Circuit cases that seemingly indicate that a sentencing court should look to the totality of the circumstances in deciding whether the defendant's case is atypical for purposes of a departure, our review of those cases reveals that neither lends support to his contention. United States v. Takai, 941 F.2d 738, 742-44 (9th Cir.1991), involved "aberrant" conduct by the defendant that was not adequately considered by Guidelines, while in United States v. Cook, 938 F.2d 149, 152-53 (9th Cir.1991), the decision was to remand because the district court erroneously believed that it lacked authority to depart. In Cook, the court gave no indication as to what factors were at issue in connection with the possible downward departure.
 
 
 21
 Furthermore, it is clear that any disparity between the sentence a defendant would receive pursuant to the Guidelines and the sentence he would receive for the same offense under a state law sentencing scheme cannot be a basis for departure. We have recently stated that
 
 
 22
 [a]llowing departure because a defendant might have been subjected to different penalties had he been prosecuted in state court would make federal sentences dependent on the law of the state in which the sentencing court was located, resulting in federal sentencing that would vary from state to state. To adopt this rationale for departure would surely undermine Congress' stated goal of uniformity in sentencing.
 
 
 23
 United States v. Haynes, 985 F.2d 65, 70 (2d Cir.1993). Accordingly, the district court's desire to achieve parity between the Guidelines and New York state law, benevolent as it may have been, was improper. Cf. Schular, 907 F.2d at 298 ("Mere dissatisfaction with the Sentencing Guidelines is not a sufficient reason for departure.").
 
 
 24
 In sum, we hold that where independent factors have been adequately considered by the Sentencing Commission and each factor considered individually fails to warrant a downward departure, the sentencing court may not aggregate the factors in an effort to justify a downward departure. Furthermore, we reiterate that parity between federal and state sentencing schemes is not a proper consideration for a sentencing court.
 
 CONCLUSION
 
 25
 For the foregoing reasons, we vacate Minicone's sentence and remand for resentencing. In light of the history of this case, and in order to forestall any further adjustments or departures in regard to the sentence that must be imposed, we direct the district court to impose the statutory maximum prison term of 480 months as the sentence for Jack J. Minicone, Jr.